Filed 8/31/20  P. v. Luquin CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>WILLEBALDO ESTRADA-LUQUIN,<br><br>    Defendant and Appellant. | A156155<br><br>(Contra Costa County<br>Super. Ct. No. 5-181539) |

A jury convicted Willebaldo Estrada-Luquin of two charges related to driving under the influence (DUI).  He argues the trial court committed *Batson/Wheeler* error when it sustained a peremptory challenge to a single juror.  We agree with the trial court that the defense did not make a prima facie showing of discriminatory exercise of the peremptory challenge and affirm.

**BACKGROUND**

One evening in July 2017, Estrada-Luquin ran a stop sign and hit another vehicle going through the intersection.  Officers responding to the scene observed Estrada-Luquin had bloodshot eyes, an unsteady gait, and smelled like alcohol.  He failed field sobriety tests.  Tests of his blood alcohol content taken at the police station a couple of hours after the collision measured .27 and .25 percent.

1

The Contra Costa County District Attorney filed an information charging Estrada-Luquin with four felony offenses: (1) driving under the influence within ten years of a prior felony DUI offense (Veh. Code, §§ 23152, subd. (a), 23550.5), count 1); (2) driving with a blood alcohol content in excess of .08 percent within ten years of a prior felony DUI offense (Veh. Code, §§ 23152, subd. (b), 23550.5, count 2); (3) driving under the influence of alcohol within ten years of three other DUI offenses (Veh. Code, §§ 23152, subd. (a), 23550, count 3); and (4) driving with a blood alcohol content in excess of .08 percent within ten years of three other DUI offenses (Veh. Code, §§ 23152, subd. (b), 23550, count 4). Estrada-Luquin was also charged with misdemeanor driving on a suspended or revoked license after a DUI conviction (Veh. Code, § 14602.1, subd. (a), count 5).

Estrada-Luquin pleaded no contest to the misdemeanor charge of driving on a suspended license and waived a jury trial on the prior convictions. The prosecution dismissed counts 3 and 4, and Estrada-Luquin stood trial for the charges in counts 1 and 2. During trial, he was assisted by a Spanish language interpreter. A jury found him guilty of both charges. In a separate proceeding, the trial court found his prior convictions true. He was sentenced to three years in state prison. This appeal followed.

## DISCUSSION

Estrada-Luquin is a Hispanic male. He argues the prosecutor improperly exercised a peremptory challenge against Juror 41, who was also a Hispanic male, on the basis of race. He contends the trial court erred when it denied his *Batson/Wheeler* motion challenging the strike. (*People v. Wheeler* (1978) 22 Cal.3d 258, 276-277 (*Wheeler*); *Batson v. Kentucky* (1986) 476 U.S. 79, 88 (*Batson*).)

2

Both the state and federal Constitutions prohibit the use of peremptory challenges intended to remove prospective jurors on the basis of group bias. (*Batson, supra*, 476 U.S. at p. 89; *Wheeler, supra*, 22 Cal.3d at pp. 276-277.) The now familiar *Batson/Wheeler* inquiry consists of three distinct steps. First, the opponent of the strike must make out a prima face case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose in the exercise of peremptory challenges. Second, if the prima facie case has been made, the burden shifts to the proponent of the strike to explain adequately the basis for excusing the juror by offering permissible, nondiscriminatory justifications. Third, if the party has offered a nondiscriminatory reason, the trial court must decide whether the opponent of the strike has proved the ultimate question of purposeful discrimination. (*Johnson v. California* (2005) 545 U.S. 162, 168 (*Johnson*).) " 'The ultimate burden of persuasion regarding [discriminatory] motivation rests with, and never shifts from, the [defendant].' " (*People v. Manibusan* (2013) 58 Cal.4th 40, 75.)

"Review of a trial court's denial of a [*Batson*/Wheeler] motion is deferential, examining only whether substantial evidence supports its conclusions." (*People v. Lenix* (2008) 44 Cal.4th 602, 613; see *People v. Crittenden* (1994) 9 Cal.4th 83, 117 [" ' "Because *Wheeler* motions call upon trial judges' personal observations, we view their rulings with 'considerable deference' on appeal." ' "])

Initially, the trial court conducted a brief voir dire of Juror 41 based on his responses to a jury questionnaire. He had served on a prior jury, and in follow-up, explained to the court the case was a criminal matter involving allegations of child abuse and that the jury had reached a verdict. After he

3

stated he could judge all witnesses by the same standards, this exchanged occurred:

> [The Court]: You indicated that you may have a belief that would prevent you from determining whether someone is guilty or not guilty of a crime?
>
> [Juror 41]: Yes, where, for example, a murder case or a manslaughter, my conscience will kind of affect that decision.
>
> [The Court]: Does that impact you on a case of this nature?
>
> [Juror 41]: No.

The prosecutor later followed up:

> [Prosecutor]: You said you might have a belief that would affect a murder or manslaughter case but not necessarily a DUI case; is that true?
>
> [Juror 41]: Yes.
>
> [Prosecutor]: What belief would affect you in a murder case, for example?
>
> [Juror 41]: I studied the Bible, and in those cases it's kind of difficult for my conscience to decide.
>
> [Prosecutor]: Are you leaning in favor of one party over the other in that situation?
>
> [Juror 41]: It's just the—the proof without reasonable doubt, you need to have more witnesses, you need to have more information than just what is given in those cases.
>
> [Prosecutor]: So what I think I hear you saying, and you can correct me if I'm wrong, is you might feel like that's a more serious case?
>
> [Juror 41]: Yes. Correct.

[Prosecutor]: And in that instance, you might find yourself needing more?

[Juror 41]: Yes.

The prosecutor continued: "One of the things we ask you to do as a juror is set aside any kind of sympathy. You're not to consider things like punishment, and, you know, you're supposed to treat all of these cases seriously. So I want to make sure, do you feel like that's something that you can do or do you feel like that belief might affect you in any way when you go back into the deliberation room?' Juror 41 responded, "No, I can do it. [¶] . . . [¶] I've done it before," in an apparent reference to his prior jury service. The prosecutor asked, "And this one witness rule, are you comfortable with that?" Juror 41 replied, "Yes, the way that it was explained." The prosecutor then asked Juror 41 the same questions she asked the other prospective jurors. Referring to the clear liquid in her cup, she asked what he thought it was. Juror 41 responded that it looked like water and it was unlikely to be something else. Describing a hypothetical trial scenario, she asked what his verdict would be for a friend who drove home perfectly but with a blood alcohol content over .08 percent. He replied, "Guilty."

Defense counsel's voir dire of Juror 41 continued to examine his responses to earlier questions:

[Defense Counsel]: [Y]ou were talking to us earlier about—about homicide trials, they feel different to you?

[Juror 41]: Yes.

[Defense counsel]: They feel more serious to you?

[Juror 41]: Yes. My Bible states that it would be two witnesses that actually saw the event or confession.

5

[Defense counsel]: So if you become one of our jurors— I'll—I'll just clarify this, though. But because this case is a DUI, it's not that you would take it not seriously, you would still take this case serious, too; am I getting that right?

[Juror 41]: Yes. Of course I would take it seriously.

[Defense counsel]: I'm just clarifying with you, sir.

The prosecutor excused Juror 41 with a peremptory challenge. Defense counsel asserted a *Batson/Wheeler* objection and stated her reasons: "[Juror 41], late middle age to early old age, however, based on his last name, his appearance and the fact that he does have, as I believe, a slight accent who is speaking English, he is Hispanic. He is the only Hispanic male currently on the jury within the 18—excuse me, he may be the only Hispanic male who remains in our pool. We did have [Mr. N.] earlier, but it's unclear whether or not he returned for this morning's session. [¶] [Juror 41], the only thing that I can recall that he said that was unusual was that he would consider a homicide case more serious for some biblical reasons about—to be honest, I didn't quite follow the witness—in a homicide case for his biblical teachings, but otherwise he said that, you know, he could follow the law. He's been a juror previously. [¶] And my concern is that my client, obviously, is a Hispanic male, and my client is here with a translator. And I believe that [Juror 41] is bilingual, though I do not know that definitively."

The trial court overruled defense counsel's *Batson/Wheeler* objection. It stated: "So, again, the standard I'm applying will be the same as I've previously articulated for Johnson versus California. As I mentioned, being male is a cognizable group and being Hispanic—or a Hispanic male are all cognizable groups, and I do find that [Juror 41] is Hispanic for the record. [¶] So the question is whether a prima facie case has been shown. I think it's

also relevant to say that I think we have (Prospective Juror No. 10) is pretty clearly a Hispanic female juror still in the group of 12, and I think we've had one Hispanic juror, [Ms. P.], excused by the defense on the peremptory challenge. [¶] On the issue of whether there's a prima facie showing that the excusal of [Juror 41] is based on his race, I'm going to deny the prima facie showing. I don't find a prima facie showing, so I'm going to deny the motion on that basis. But I will again allow [the prosecutor] to articulate her reasons, if she wishes to do so for any potential review."

The prosecutor explained, "[Juror 41] did mark on the questionnaire that he had a belief that might make it difficult to be fair in this trial. When probed, he did say that it would mainly affect a case such as a murder or manslaughter, something that he would consider to be more serious. He kind of went back and forth on that issue. But I do have concerns that he would take this case seriously enough as compared to a murder or manslaughter case. [¶] He also talked about how he has a conscience that affects his decisions. And while he mentioned it would have less of an impact in this case, it's still a concern to me when [defense counsel] followed up with [Juror 41], he said something to the effect of the Bible dictates that you need two witnesses at minimum who see any event. [¶] Obviously, I didn't have a chance to follow up with him at that point, but once I heard that, it confirmed for me that his—even though he was kind of going back and forth, there is a concern there that the one witness rule would be something that was difficult for him to follow. [¶] As the Court noted just now, there is a Hispanic female still in the box. And, again, as the Court noted, the defense also did kick somebody who is seemingly Hispanic as well. [¶] And that would conclude my remarks." Without evaluating or commenting on the prosecutor's reasons, the court then directed the jurors return to the courtroom.

7

We agree with the trial court's conclusion that Estrada-Luquin failed to make a prima facie showing that Juror 41 was excused because he is Hispanic.

"A prima facie case of racial discrimination in the use of peremptory challenges is established if the totality of the relevant facts ' "gives rise to an inference of discriminatory purpose." ' " (*Johnson*, *supra*, 545 U.S. at p. 168.) "Although the question at the first stage concerning the existence of a prima facie case depends on consideration of the entire record of voir dire as of the time the motion was made [citation], we have observed that certain types of evidence may prove particularly relevant.  [Citation.]  Among these are that a party has struck most or all of the members of the identified group from the venire, that a party has used a disproportionate number of strikes against the group, that the party has failed to engage these jurors in more than desultory voir dire, that the defendant is a member of the identified group, and that the victim is a member of the group to which the majority of the remaining jurors belong.  [Citation.]  A court may also consider nondiscriminatory reasons for a peremptory challenge that are apparent from and 'clearly established' in the record [citations] and that necessarily dispel any inference of bias." (*People v. Scott* (2015) 61 Cal.4th 363, 384 (*Scott*).)

The record does not support an inference of discriminatory purpose necessary to make a prima facie case of discrimination.  As the court observed, the prosecutor had not excused other Hispanic jurors prior to Juror 41, and the jury included at least one other Hispanic juror.  In fact, it appears defense counsel challenged the only other Hispanic juror removed from the jury before Juror 41.  Nor would we characterize the prosecutor's voir dire of Juror 41 as desultory.  She engaged in the same questioning she employed with other prospective jurors.  She followed up on questions the court

8

considered important enough to follow up on, and which defense counsel touched on, as well. Juror 41's responses to the questions on bias also provided grounds for a challenge. In his questionnaire, Juror 41 stated he held certain beliefs that would prevent him from determining a defendant's guilt. When he was asked to explain further, he said his conscience would affect his decisions in, for example, murder and manslaughter cases, which he considered more serious than a DUI case. Eventually, he explained his Bible studies made homicide cases "kind of difficult for [his] conscience to decide." Even defense counsel described the response as "unusual" and hard for her to follow. Although Juror 41 said that such difficulties for him would arise in murder or manslaughter cases, his response could reasonably raise a concern by the prosecutor that Juror 41's Bible studies may conflict with the applicable law or the court's instructions, even in a DUI case. A prosecutor could reasonably want to avoid such a risk. The totality of the circumstances shows there were nondiscriminatory reasons to excuse Juror 41 that dispel any inference of racial bias.

Estrada-Luquin suggests the analysis we have employed applies an incorrect standard of review. He says that we may not disregard the prosecutor's stated reasons for exercise of the challenge in response to the third stage of analysis under *Johnson* because her statement of reasons implies the court found a prima facie case. Thus, Estrada-Luquin argues we must assess the credibility and weight of the prosecution's justification for the challenge. He contends our approach contradicts the United States Supreme Court's holding in *Hernandez v. New York* (1991) 500 U.S. 352, 359 (*Hernandez*) that "such review moots the *prima facie* stage." We disagree.

In *Hernandez*, the Supreme Court stated, "Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial

9

court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." (*Hernandez, supra*, 500 U.S.. at p. 359.) But our Supreme Court later observed, " [A] trial court's request that the prosecutor provide reasons for his or her exercise of a peremptory challenge is not an implicit finding the defendant has established a prima facie case, and does not moot the issue, in every instance." (See *People v. Taylor* (2010) 48 Cal.4th 574, 612-614.) In *Scott*, our Supreme Court read *Hernandez* to hold that "the issue of whether the defendant had made a prima facie showing of discrimination was moot only in the particular circumstance where the trial court failed to consider whether a prima facie showing had been made, and ruled instead on the ultimate question of intentional discrimination." (*Scott, supra*, 61 Cal.4th at p. 393.) Here, the trial court clearly found defense counsel failed to make a prima facie showing of discrimination, so *Hernandez* does not apply. (See *ibid.* ["[A]s we have previously explained, *Hernandez* has no application where, as here, the trial court 'expressly found a prima facie case of discrimination was not established.' "].) Accordingly, we need not assess the prosecutor's statement of reasons and do not address Estrada-Luquin's arguments regarding the suspect validity of those statements.

Defendant also argues the presence of other prospective Hispanic jurors cannot excuse a discriminatory challenge or pretextual reasoning offered to support one. In a totality of circumstances analysis, however, whether the prosecutor has stricken most or all prospective jurors in the identified group may be one of many considerations in determining whether defense counsel made a prima facie case. (See *Scott, supra*, 61 Cal.4th at p. 384.) As we have discussed, additional factors, including Juror 41's responses to the court and

10

the prosecutor's non-desultory questions, when viewed in light of the entire record, dispelled any inference of discrimination.

## DISPOSITION

The judgment is affirmed.

_____

Siggins, P.J.


WE CONCUR:


_____

Fujisaki, J.


_____

Petrou, J.


_People v. Estrada-Luquin_, A156155


12